UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETE AGRAAN, JR., ALICIA AGRAAN,<br><br>Plaintiffs,<br><br>v.<br><br>SELECT PORTFOLIO SERVICING, INC. J.P. MORGAN CHASE BANK, N.A., and DOES 1 through 50, inclusive,<br><br>Defendants. | No. 2:17-cv-02163-KJM-CKD<br><br><br><br>ORDER |

Plaintiffs Pete Agraan and Alicia Agraan ("the Agraans" or "plaintiffs"), proceeding *pro se*, seek a temporary restraining order ("TRO") against defendant Select Portfolio Services ("SPS") preventing the trustee sale of the Agraans' home. Ex Parte TRO Request, ECF No. 12; TRO Mem., ECF No. 12-1. The trustee sale is currently scheduled for tomorrow, December 6, 2017. TRO Mem. at 1. For the following reasons, the court GRANTS the request.

I.  BACKGROUND

SPS offered the Agraans a loan modification on June 22, 2017 and requested they begin making trial period payments. TRO Mem. at 3. Due to insufficient income at the time, the Agraans could not accept the offer. *Id.* Their financial circumstances changed "[s]hortly thereafter," and they requested SPS reconsider their modification request, but because SPS's prior modification offer "had lapsed, the loan modification was no longer offered." *Id.*

1

In September 2017, the Agraans again notified SPS of a change in financial circumstances and requested a loan modification. *Id.* SPS directed the Agraans to submit a new modification application, which the Agraans submitted on September 15, 2017. *Id.*

On September 18, 2017, SPS sent the Agraans a letter stating no loss mitigation options were available and foreclosure would occur within the next 23 business days. *Id.*; Sept. 18 Letter, ECF No. 12-3 at 7. This letter provided no substantive basis for the denial. *See* Sept. 18 Letter. A week later, plaintiffs sent SPS a letter demanding an appeal of the denial. TRO Mem. at 3; Appeal Letter, ECF No. 12-3 at 9. The letter explains the Agraans submitted a modification application "as [they] were told," and that the application "shows our circumstances have changed along with the supporting evidence." Appeal Letter at 9. The Agraans offered to "submit additional documents that support our income now." *Id.*

On September 27, 2017, SPS sent the Agraans two letters. TRO Mem. at 3. The first stated SPS would send a written response to the Agraans' "inquiry" within 30 days. ECF No. 12-3 at 11. The second letter noted SPS had "forwarded" the Agraans' "correspondence to the appropriate department for handling." ECF No. 12-3 at 13. To date, the Agraans represent they have not received further communication from SPS regarding their application or appeal. TRO Mem. at 4.

The Agraans sued SPS and J.P. Morgan Chase Bank, N.A., on October 6, 2017 in Yolo County Superior Court alleging violations of the California Homeowner's Bill of Rights ("HBOR"), negligence, and fraudulent and unfair business practices. Compl., Ex. A, ECF No. 1-1. On October 10, 2017, that court issued a TRO restraining SPS from conducting a trustee sale of the Agraans' property. *See* SPS Notice of TRO Expiration, ECF No. 10 at 4-5 (copy of Superior Court order). That court also ordered SPS to show cause why a preliminary injunction should not issue and set an October 26, 2017 hearing on the order to show cause. *Id.* at 5. One week after the state court issued the TRO, defendants removed the case to this court. *See* Removal Notice, ECF No. 1. Defendants' notice stated, "[t]he removal of this action limits the duration of the Temporary Restraining Order issued in the State Action to 14 days following removal." *Id.* at 4 (citing Fed. R. Civ. P. 65(b)). SPS then notified the Agraans that the trustee

sale was postponed to December 6, 2017. ECF No. 12-3 at 16 (notice dated Oct. 19, 2017). On November 27, 2017, defendants filed their official notice here, confirming its position the TRO issued by the state court had expired under Federal Rule of Civil Procedure 65(b). SPS Notice of TRO Expiration.

On December 2, 2017, Alicia Agraan contacted SPS's foreclosure department "to stop the foreclosure sale." Pls.' Decl., ECF No. 12-2, at 2. As instructed, she then contacted SPS's legal department on December 4 and contacted SPS's attorney of record. *Id.* The Agraans filed this ex parte TRO application on December 4, 2017, requesting the court issue (1) an order temporarily restraining SPS from conducting a trustee sale of their property, and (2) an order to show cause to SPS as to why the court should not issue a preliminary injunction. Ex Parte TRO Request at 1.

On December 5, 2017, SPS filed an opposition to the Agraans' request. Opp'n, ECF No. 14. SPS argues that, rather than seeking a TRO now, the Agraans should have sought a preliminary injunction after defendants removed this case to federal court. *Id.* at 2. SPS further argues it "is fully within its rights to refuse to consider serial loan modification applications from Plaintiffs." *Id.* at 2, 4. SPS does not substantively address the status of the Agraans' appeal, suggesting that SPS's September 27 letters to the Agraans "simply acknowledged . . . that more letters were received from Plaintiffs." *Id.* at 5. Should the court issue a TRO, SPS requests the court condition the TRO on financial conditions, including a bond. *Id.* at 6. Finally, SPS's attorney notes he has been contacted by a disbarred attorney, Pitor or Piotr Reysner, on several occasions on the Agraans' behalf regarding this matter. Decl., ECF No. 14-1. ¶ 4

II. <u>LEGAL STANDARD</u>

The purpose of a TRO is to preserve the status quo pending the complete briefing and thorough consideration contemplated by full proceedings pursuant to a preliminary injunction. *See Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438-39 (1974) (TROs "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer"); *see*

/////

3

*also Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006); *Dunn v. Cate*, No. CIV 08-873-NVW, 2010 WL 1558562, at *1 (E.D. Cal. April 19, 2010).

Issuing a TRO is an extraordinary remedy, and plaintiffs have the burden of proving the propriety of such a remedy. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). In general, the showing required for a TRO and a preliminary injunction are the same. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The party requesting preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 20 (2008); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*). The propriety of a TRO hinges on a significant threat of imminent, irreparable injury. *Caribbean Marine Serv. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988).

Alternatively, courts may analyze a TRO request using a sliding scale approach through which the elements of the "test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). This test requires plaintiffs to demonstrate the requisite likelihood of irreparable harm, show that an injunction is in the public interest, raise "serious questions" going to the merits, and show a balance of hardships that "tips sharply" in plaintiffs' favor. *Id.* at 1131-36 (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after *Winter*).

III. ANALYSIS

Applying the sliding scale approach, the court finds a TRO is appropriate here to preserve the status quo pending a hearing on the Agraans' request for preliminary injunction. The Agraans have established a likelihood of irreparable harm, as they risk losing their home should the December 6, 2017 trustee sale proceed. *See* TRO Mem. at 8; *see also Castellanos v. Countrywide Bank NA*, No. 15-CV-00896-BLF, 2015 WL 914436, at *2 (N.D. Cal. Feb. 27, 2015) (citing cases and noting "[c]ourts have repeatedly concluded that the loss of one's home is

4

sufficient to satisfy the element of irreparable injury"). A TRO is also in the public interest, as it will allow the court time to ensure compliance with home-protection laws designed to protect the public. *See id.* ("'[I]t is in the public interest to allow homeowners an opportunity to pursue what appear to be valid claims before being displaced from their homes.'") (quoting *Sencion v. Saxon Mortg. Servs., LLC*, 2011 WL 1364007, at *1 (N.D. Cal. Apr. 11, 2011)).

The court also finds the balance of hardships tips sharply in the Agraans' favor. A TRO merely prevents SPS from conducting a trustee sale until the court has determined whether such sale is appropriate in light of complete briefing and thorough consideration. While SPS complains that the sale is long overdue, see Opp'n at 5, this hardship does not overcome the Agraans' potential loss of their home should the sale proceed, *see Castellanos*, 2015 WL 914436, at *2. Moreover, the court can act promptly to consider the merits more fully on an expedited schedule, set below.

Finally, the court finds the Agraans have raised serious questions as to the merits of their HBOR dual-tracking claim. TRO Mem. at 5 (arguing they "are likely to prevail on their legal theory that no trustee sale can be had until SPS fully complies with its legal obligations."). Under HBOR, "a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the [borrower's] complete first lien loan modification application is pending." Cal. Civ. Code § 2923.6(c). Doing so is referred to as "dual tracking." *Haltom v. NDEx W.*, LLC, No. 2:16–cv–00086–TLN–KJN, 2016 U.S. Dist. LEXIS 5656, at *6 (E.D. Cal. Jan. 15, 2016). HBOR's dual tracking protections persist until, as relevant here, "[t]he mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired," or "[t]he borrower does not accept an offered first lien loan modification within 14 days of the offer." Cal. Civ. Code § 2923.6(c)(1)-(2). At that point, a servicer is not "obligated" to evaluate a borrower's subsequent modification application "unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer." Cal. Civ. Code § 2923.6(g).

Here, plaintiffs did not accept SPS's June 22, 2017 modification offer. TRO Mem. at 3. Thus, the Agraans did "not accept an offered first lien loan modification," *see* Cal. Civ. Code § 2923.6(c)(2), and SPS was "obligated" to consider their subsequent September 15, 2017 application only if they documented and submitted to SPS a "material change in [their] financial circumstances since the date of [their] previous application[,]" *see* Cal. Civ. Code § 2923.6(g). The Agraans argue they informed SPS of their change in financial circumstances in September of 2017, and SPS instructed them to submit a new modification application. TRO Mem. at 3. The Agraans did so on September 15, providing "all requested documentation." *Id.* Thus, the Agraans argue SPS was obligated to consider their subsequent application under § 2923.6(g). The Agraans' communications with SPS following their September application indicate they documented a material change in financial circumstances as § 2923.6(g) requires. For example, in their September 25, 2017 letter to SPS, the Agraans explain their application "shows our circumstances have changed" and provided "supporting evidence." Appeal Letter. The Agraans requested SPS "[p]lease reconsider the [application,]" and offered to "submit additional documents that support our income now." *Id.* SPS argues the Argaans have not substantively described their material financial change or provided a copy of their application. Opp'n at 4. The court notes, however, SPS also does not provide a copy of the Agraans' modification application to show the Agraans did not document a material financial change. More importantly, SPS does not argue the application did not include such documentation. Rather, SPS argues only that it had no obligation to consider the Argaans' repeated requests for modification. *Id.* at 2, 4. The parties' competing arguments raise serious questions as to the merits of the Agraan's dual tracking claim. *See Vasquez v. Bank of Am. , N.A.*, No. 13-CV-02902-JST, 2013 WL 6001924, at *8 (N.D. Cal. Nov. 12, 2013) (holding plaintiff's allegations that she informed defendant of her new employment and higher income, submitted a new modification application "including documentation of her increased income," and later confirmed documents were being reviewed sufficiently alleged compliance with § 2923.6(g)).

There is also a serious question regarding whether SPS's September 18, 2017 letter was a valid rejection of the Agraans' September 15, 2017 application. *See* TRO Mem. at 7; *see* §

2923.6(c)(1) (permitting trustee sale after servicer's "written determination that the borrower is not eligible" and expiration of § 2923.6(d) appeal period). The Agraans argue denial of a valid modification application must comply with § 2923.6(f), which sets forth written denial requirements. Section 2923.6(f)(1) requires written notice of "[t]he amount of time from the date of the denial letter in which the borrower may request an appeal of the denial of the first lien loan modification and instructions regarding how to appeal the denial." Here, SPS's denial letter does not mention the Agraans' right to appeal. TRO Mem. at 7. Further, SPS's September 27 response to the Agraans' appeal indicated SPS would provide "a written response and resolution regarding this matter within 30 days from the date we received your inquiry[,]" ECF No. 12-3 at 11. Yet another SPS letter sent that same day notified the Agraans their "correspondence" was "forwarded . . . to the appropriate department for handling." *Id.* at 13. These letters send different messages and give rise to confusion about the process SPS followed, further supporting the conclusion that a serious question is raised as to whether SPS properly denied the Agraans' application. If not, the application remains pending and thus triggers HBOR's dual tracking protections. SPS's opposition does not clarify the post-appeal record. Rather, SPS attributes its post-appeal letters to "acknowledg[ment] . . . that more letters were received from Plaintiffs." Opp'n at 5. This bare argument does not tip the balance in SPS's favor. The court thus finds there is a serious question as to the merits of the Agraans' claim.

IV. <u>PRO SE STATUS</u>

In light of SPS's representations that its counsel was contacted by someone who is not an attorney and who purported to be acting on the Agraans' behalf, the Agraans are reminded that they each must be prepared to speak on his and her own behalf in the course of litigating this matter, including in any courtroom proceedings.

V. <u>CONCLUSION</u>

For these reasons, the court GRANTS plaintiffs' TRO application. No bond shall be required at this time. A preliminary injunction hearing is set for **Tuesday, December 19, 2017**

*/////*

*/////*

7

**at 1:30 p.m**. The Agraans shall file any additional brief with supporting declarations by **4 p.m. on December 12, 2017**. SPS shall file any opposition briefing by **4 p.m. on December 15, 2017**. All briefing is subject to this court's page limitations set forth in its standing order.

        SO ORDERED.

DATED: December 5, 2017.

_____
UNITED STATES DISTRICT JUDGE