UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETE AGRAAN, JR., ALICIA AGRAAN, <br><br> Plaintiffs, <br><br> v. <br><br> SELECT PORTFOLIO SERVICING, INC. J.P. MORGAN CHASE BANK, N.A., and DOES 1 through 50, inclusive, <br><br> Defendants. | No. 2:17-cv-02163-KJM-CKD <br><br><br> ORDER |

Plaintiffs Pete Agraan and Alicia Agraan ("the Agraans" or "plaintiffs"), proceeding *pro se*, seek a preliminary injunction against defendant Select Portfolio Servicing, Inc. ("SPS") preventing the trustee's sale of the Agraans' home. The Agraans filed an application for a temporary restraining order ("TRO") on December 4, 2017 to prevent the trustee's sale scheduled for December 6, 2017. TRO Mem, ECF No. 12-1 at 1.[1] The court granted the Agraans' request on December 5, 2017, and set a preliminary injunction hearing for December 19, 2017. ECF No. 15. The Agraans filed a "supplemental declaration" in support of their request for a preliminary injunction. PI Mem, ECF No. 16. SPS filed an opposition. PI Opp'n, ECF No. 17. The court held oral argument on December 19, 2017. Pete Agraan and Alicia

---

[1] All citations to the record refer to ECF pagination.

1

Agraan appeared, and A. Barclay Byrnes appeared for SPS. For the following reasons, the court GRANTS the request. As discussed at hearing, the court ORDERS the parties to attend a settlement conference on January 11, 2018.

I. BACKGROUND

On an unspecified date, the Agraans obtained a mortgage loan secured by a deed of trust on their residence, 3700 Silverwood Rd., West Sacramento, California 95691. Compl., Ex. A, ECF No. 1 ¶¶ 7, 10. SPS is the servicer on the note. *Id.* ¶ 10. SPS claims the Agraans have not made a mortgage payment or paid their property taxes or insurance in more than six years. PI Opp'n at 1. SPS further claims it has advanced more than $47,000.00 in property taxes and insurance for the Agraans. *Id.* According to SPS, the Agraans' total arrearage is more than $164,446.86. *Id.*

On June 22, 2017, following the Agraan's application for a loan modification, SPS offered the Agraans a modification requiring three monthly trial payment plans of $2,353.22, with the first due on August 1, 2017. Compl. ¶¶ 13-15; June 22 Offer, Ex. A, ECF No. 17-1 at 5, 21. The Agraans explain that "[u]nfortunately, Plaintiffs at that time had insufficient income to afford the offered TPP and were forced to let it go." Compl. ¶ 15. In a September 5, 2017 letter, SPS stated it considered the Agraans' request for loss mitigation assistance "withdrawn" because the Agraans "did not accept the offer of loss mitigation assistance by the established deadline." ECF No. 16 at 29. The letter noted, "Depending on your situation, we may have an account modification option for you. If you have already been evaluated for these programs, you may have to show a change in your circumstances in order to qualify." *Id.* A notice of trustee's sale of the Agraans' property was recorded on September 12, 2017. ECF No. 12-3 at 3-5.

Although the Agraans did not accept SPS's June modification offer, they allege, inconsistently, that their financial circumstances (1) "had changed" by the time they received the offer, PI Mem. at 3, or (2) their financial circumstances changed "[s]hortly thereafter," Compl. ¶ 16; TRO Mem. at 3. The Agraans contacted SPS "[i]n early September, 2017 . . . and explained the change in circumstances in their income." Compl. ¶ 17. At SPS's direction, the Agraans submitted a new modification application by email on September 15, 2017, providing "all

2

requested documentation."[2] *Id.*; *see* Sept. 15 Application, Ex. B, ECF No. 17-1 at 36-50. The Agraans' September application included a letter dated September 5, 2017, stating, "Our reason for falling behind on our mortgage payment was due to job loss because of illnesses and reduction in our income." Sept. 15 Application at 37. The application also included a hardship affidavit, in which the Agraans checked boxes to indicate: (1) their household income had been reduced, (2) their expenses had increased, and (3) their cash reserves were insufficient to maintain their current mortgage payment and cover basic living expenses at the same time. *Id.* at 38. The application stated the Agraans' gross monthly income is $6,071, with $4,016 in gross monthly wages and $2,055 in monthly Social Security income. *Id.* at 29-40. The application further stated the Agraans have $6,840 in monthly expenses, reflecting a $2,270 first monthly mortgage payment and a $400 second mortgage payment. *Id.* at 39-40. Following the application's instructions, *see id.* at 40, Ms. Agraan provided two pay stubs from her employer, one which indicated she earned no normal gross wages in July 2017 and another indicating she earned $4,016 in August 2017. *Id.* at 46-47. Mr. Agraan provided a letter from the Social Security Administration indicating he had received monthly benefits since December 2016. *Id.* at 48-49.

In a September 18, 2017 letter, SPS notified the Agraans that SPS received their "assistance request" and "[o]nce we have received your complete application, and any necessary third party approvals, you will be evaluated for all available loss mitigation options for which you are eligible." ECF No. 16 at 42. That same day, another SPS letter informed the Agraans that no loss mitigation options were available and foreclosure would occur within the next 23 business days. Compl. ¶ 18; ECF No. 12-3 at 7. Although SPS's letter did not notify the Agraans of any right to appeal the denial, the Agraans appealed SPS's apparent denial in a September 25, 2017 letter. Compl. ¶ 19; ECF No. 12-3 at 9. In their appeal, the Agraans explained they had submitted a modification application "as [they] were told," and the application "shows our

/////

---

[2] Although both parties submit the Agraans' September 15, 2017 modification application, the Agraans' submission omits all attachments. *See* Ex. C, ECF No. 16 at 33-40. The court therefore relies on SPS's copy, which includes attachments to the application. The Agraans have not objected to the court's doing so.

3

circumstances have changed along with the supporting evidence." ECF No. 12-3 at 9. The Agraans offered to "submit additional documents that support our income now." *Id.*

On September 27, 2017, SPS sent the Agraans two letters. Comp. ¶ 19. The first stated SPS would provide a written response to the Agraans' "inquiry" within 30 days. ECF No. 12-3 at 11. The second stated SPS had "forwarded" the Agraans' "correspondence to the appropriate department for handling." *Id.* at 13. Despite alleging in their complaint and TRO request that they received no further communication from SPS regarding the status of their application and appeal, the Agraans now provide an October 3, 2017 letter from SPS. *See* Compl. ¶ 20 ("SPS has not sent any denial of the application . . . ."); *see also* TRO Mem. at 4 ("To date, no written response has been forthcoming."); *but see* Oct. 3 Letter, ECF No. 16 at 45-47. SPS's October 3 letter states, "you requested that we review an additional loss mitigation application. Please note the foreclosure sale is scheduled to occur on October 11, 2017; as such, you are no longer eligible for loss mitigation review." ECF No. 16 at 45.

On October 6, 2017, the Agraans sued SPS and J.P. Morgan Chase Bank, N.A. in Yolo County Superior Court, alleging violations of the California Homeowner's Bill of Rights ("HBOR"), negligence and fraudulent and unfair business practices. Compl. On October 10, 2017, that court issued a TRO restraining SPS from conducting a trustee sale of the Agraans' property. *See* ECF No. 10 at 4-5 (copy of Superior Court order). The state court also ordered SPS to show cause why a preliminary injunction should not issue and set an October 26, 2017 hearing on the order to show cause. *Id.* at 5. One week after the state court issued the TRO, defendants removed the case to this court. *See* Removal Notice, ECF No. 1.

In a letter dated October 19, 2017, Quality Loan Service Corp. notified the Agraans that the trustee sale was postponed to December 6, 2017. ECF No. 12-3 at 16. On November 27, 2017, defendant filed a notice here, confirming its position that the TRO issued by the state court had expired under Federal Rule of Civil Procedure 65(b). ECF No. 10. As noted, the Agraans filed an ex parte TRO application on December 4, 2017, TRO Not., ECF No. 12; TRO Mem., and SPS filed an opposition the next day, TRO Opp'n, ECF No. 14. The court granted the TRO request on December 5, 2017. ECF No. 15.

The Agraans filed a supplemental declaration requesting the court issue a preliminary injunction preventing the sale of their home pending resolution of their case. PI Mem. Although the Agraans' complaint alleges multiple violations of law, both their TRO and preliminary injunction requests are based exclusively on their allegations that SPS violated the HBOR. TRO Mem.; PI Mem.; *see* Cal. Civ. Code § 2924.12 (permitting injunctive relief for violations of § 2923.6). SPS opposes. PI Opp'n.

II. LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (internal quotation marks and citation omitted). "[T]he purpose of a preliminary injunction is to preserve the status quo between the parties pending a resolution of a case on the merits." *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012) (citation omitted). A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits. that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 20 (2008). A district court should enter a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

Alternatively, courts may issue a preliminary injunction under a sliding scale approach, which requires plaintiffs to demonstrate the requisite likelihood of irreparable harm, show that an injunction is in the public interest, raise "serious questions" going to the merits and show a balance of hardships that "tips sharply" in plaintiffs' favor. *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-35 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after *Winter*).

III. ANALYSIS

After a careful review of the parties' briefing and consideration of the arguments made at hearing, the court concludes the Agraans have raised serious questions going to the merits of their HBOR dual-tracking claim, the balance of hardships at this point tips sharply in their favor, the requisite likelihood of irreparable harm is established, and an injunction is in the

5

public interest. Accordingly, the court GRANTS the Agraans' request for a preliminary injunction subject to the posting of a bond as explained below.

A. <u>Serious Questions Going to the Merits</u>

As explained in the court's order granting the TRO, under HBOR, "a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the [borrower's] complete first lien loan modification application[3] is pending." Cal. Civ. Code § 2923.6(c). Running afoul of this rule is referred to as "dual tracking." *Haltom v. NDEx W., LLC*, No. 2:16–cv–00086–TLN–KJN, 2016 U.S. Dist. LEXIS 5656, at *6 (E.D. Cal. Jan. 15, 2016). HBOR's dual tracking protections apply until, as relevant here, "[t]he mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired," or "[t]he borrower does not accept an offered first lien loan modification within 14 days of the offer." Cal. Civ. Code § 2923.6(c)(1)-(2). At that point, a servicer is not "obligated" to evaluate a borrower's subsequent modification application "unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer." Cal. Civ. Code § 2923.6(g).

The Agraan's supplemental declaration incorporates by reference allegations raised in their application for a TRO. *See* PI Mem. at 2. The Agraans concede they did not accept SPS's June 22, 2017 loan modification offer, stating "[u]nfortunately, Plaintiffs at that time had insufficient income to afford the offered [trial payment plan] and were forced to let it go." TRO Mem. at 3. The Agraans argue, however, that although they did not accept the June modification offer, they experienced a material change in financial circumstances "[s]hortly

---

[3] Under California Civil Code § 2920.5(d)., the term "first lien" is defined as "the most senior mortgage or deed of trust on the property that is the subject of the notice of default or notice of sale." Thus, a "first lien loan modification" under California Civil Code § 2923.6(c) means a modification of the loan on "the most senior mortgage or deed of trust on the property," not the first submitted application for a loan modification. *See* Cal. Civ. Code § 2920.5(d) (defining the term "first lien").

6

thereafter," notified SPS of the change in "early September" and, as instructed by SPS, submitted a new modification application by email on September 15, 2017, "along with all requested documentation" of their changed financial circumstances. *Id.* at 3. Thus, the Agraans argue SPS engaged in dual-tracking by moving forward with the trustee sale their home while "Plaintiffs' changed income mandates a proper reconsideration of their [September] application." *Id.* at 7; *see* Cal. Civ. Code § 2923.6(g).

The record before the court raises serious questions going to the merits of the Agraans' claim SPS is "obligated" to consider their September 2017 modification application before proceeding with the trustee's sale of their home because that application documented a material change in the Agraans' financial circumstances since the date of their last application. *See* Cal. Civ. Code § 2923.6(g).; *see also* Cal. Civ. Code § 2923.6(c) ("[A] mortgage servicer . . . shall not . . . conduct a trustee's sale, while the [borrower's] complete first lien loan modification application is pending."). In their September 15 modification application, the Agraans represented that their total gross monthly income is $6,017. Sept. 15 Application at 40. Although neither party provides the Agraans' earlier modification application, a document entitled "Net Present Values (NPV) Results," attached to SPS's June 22 modification offer, fills this gap. ECF No. 17-1 at 9-19. The NPV tables indicate the Agraans gross income as documented by SPS in response to their prior application was $7,785.11. *Id.* at 9 (data input fields for non NMS, non HAMP analysis), 15 (data input fields for HAMP analysis). Comparing the Agraans' $7,785.11 gross monthly income as reflected in the NPV tables to their $6,017 gross monthly income as reflected in the September 15 application indicates the Agraans experienced a $1,768.11 decrease in gross monthly income since submitting their previous modification application. In light of the $1,768.11 decline in gross monthly income between the two applications, there is a strong likelihood the Agraans' September 2017 application documented a material change in the Agraan's financial circumstances since the date of their previous application, triggering SPS's obligation to review to modification application under California Civil Code § 2923.6(g). At hearing, SPS agreed that a material change can be, as here, a change for the worse as well as a change for the better. Further, although the Agraans' explanation at hearing of the precise

7

reasons their income has changed was less than clear, the totality of the record strongly suggests the Agraans sufficiently documented the change and SPS was therefore required to review the September application. Thus, the Agraans have raised serious questions as to whether SPS intends to proceed with a trustee's sale without adequately addressing the Agraans' application in violation of § 2923.6(c).

Although SPS argues its September 18, 2017 denial of the Agraans' modification request "was based on Plaintiffs' failure to submit any evidence or proof of changed financial circumstances[,]"as SPS's counsel essentially conceded at hearing, this claim is not supported by the record. PI Opp'n at 2; Barclay Byrnes Decl., ECF No. 17-1 ¶ 7; *see McCarthy v. Servis One, Inc.*, No. 17-CV-00900-WHO, 2017 WL 897422, at *8 (N.D. Cal. Mar. 7, 2017) (noting defendant supported basis for denial by submitting "contemporaneous notes . . . show[ing] that [defendant] did consider [plaintiff's] financials and found [plaintiff] did not qualify for a loan modification given her debt and income ratio"). First, SPS's September 18 purported denial letter informing the Agraans no loss mitigation options were available makes no mention of SPS's determination that the Agraans did not demonstrate a material change in their financial circumstances, but instead simply states "there are no available loss mitigation assistance options for which this account is eligible" and "[a] foreclosure sale has been scheduled for this property and will occur within the next 23 business days." *See* ECF No. 17-1 at 52. Moreover, that same day, SPS sent another letter acknowledging receipt of the Agraans' September 15 application, informing the Agraans they would "be evaluated for all available loss mitigation options for which you are eligible" after their application was deemed complete. ECF No. 16 at 42. This suggests either that SPS received and immediately denied the second application without considering whether the Agraans documented a material change in financial circumstances, or the right hand did not know what the left hand was doing. Likewise, SPS's October 3 letter denying the Agraans' September 25 appeal states a "foreclosure sale is scheduled to occur on October 11, 2017; as such, you are no longer eligible for loss mitigation review." ECF No. 16 at 45. This also suggests SPS refused to consider the Agraans' application simply because a trustee's sale
/////

8

was scheduled, not because that application did not document a material change in financial circumstances.

SPS's position that a servicer is not obligated to consider a modification application after recording a notice of trustee's sale finds no support in a plain reading of the statute. *See* PI Opp'n at 2. Under § 2923.6(c), a servicer "shall not record a notice of default or notice of sale, or conduct a trustee's sale, while [a] complete first lien loan modification application is pending." Cal. Civ. Code § 2923.6(c). Accordingly, it follows that a servicer cannot rely on the fact it has "record[ed] a . . . notice of sale" to summarily reject a valid pending modification application and then "conduct a trustee's sale," as the statute protects against both acts. In other words, although SPS did not record its "notice of sale" while the Agraans' application was pending, SPS is not thereby relieved of its obligation to consider a validly submitted modification application before "conduct[ing] a trustee's sale." *See id.* Further, § 2923.6(g) relieves a servicer of its obligation to review a borrower's additional modification requests when that borrower has not documented and submitted to the servicer a material change in financial circumstances. *Id.* at § 2923.6(g). Subsection (g) does not relieve a servicer of its obligation to consider such an application simply because the servicer has recorded a notice of trustee's sale. *See id.* Finally, the court notes SPS provides no support for its reading of § 2923.6 in its briefing and could cite no such authority at hearing. Nor has the court identified binding authority supporting SPS's position. Rather, courts have found a servicer is required to consider a modification application documenting a material change in financial circumstances submitted after the servicer has recorded a notice of trustee's sale. *Cf. Marques v. Wells Fargo Bank, N.A.*, No. 16-CV-03973-YGR, 2016 WL 5942329, at *2-5 (N.D. Cal. Oct. 13, 2016) (holding plaintiff stated a valid § 2923.6 claim in alleging he submitted multiple modification applications demonstrating a change in financial circumstances, all of which post-dated the servicer's filing of a notice of trustee sale); *see also Richardson v. Wells Fargo Bank, N.A.*, No. EDCV16873VAPKKX, 2016 WL 10078486, at *1-4 (C.D. Cal. Aug. 11, 2016) (explaining plaintiff filed two modification applications claiming changed financial circumstances after notice of trustee's sale was filed, but holding plaintiff failed to state § 2923.6 claim because first post-

9

notice of trustee's sale modification application was denied for insufficient income and plaintiff did not sufficiently allege second modification application was based on changed financial circumstances).

The court finds the Agraans raise serious questions going to the merits of their HBOR dual-tracking claim despite SPS's arguments the Agraans' September 15 application did not "document[]" a material change in financial circumstances. *See* Cal. Civ. Code § 2923.6(g). First, the court is not persuaded by SPS's argument the Agraans' letter accompanying their September modification application "makes no claim of changed financial circumstances," relieving SPS of any obligation to consider the application. PI Opp'n at 4. Section 2923.6(g) does not require a borrower to "claim" a change in financial circumstances; it requires a borrower to "document[]" the change and "submit[]" it to the servicer. *See* Cal. Civ. Code § 2923.6(g). In so arguing, SPS improperly attempts to limit the totality of the Agraans' September modification application to Ms. Agraan's cover letter, stating, "Our reason for falling behind on our mortgage payment was due to job loss because of illnesses and reduction of our income." *See* Sept. 15 Application at 37. Standing alone, this letter would not provide notice of the Agraans' changed financial circumstances sufficient to trigger SPS's obligation to consider the application. *See, e.g., Ware v. Bayview Loan Servicing, LLC*, No. 13-CV-1310 JLS NLS, 2013 WL 4446804, at *4 (S.D. Cal. Aug. 16, 2013) (finding a "barebones letter" alleging only increased expenses did not satisfy § 2923.6(g), as it was "bereft of any details or documentation"). The letter does not, however, stand alone and is not "bereft of . . . documentation." *See id.* Instead, it is accompanied by the Agraans' documentation of their current income, including pay stubs showing their monthly wages and Social Security income. *See* Sept. 15 Application at 39-40, 46-49. This documentation is precisely what the application required. *See id.* at 40.

For the same reason, SPS's argument the Agraans did not sufficiently "document[]" a material change in financial circumstances is not persuasive. PI Opp'n at 4-6. Rather, the Agraans complied with the application's instructions to "provide the most recent 2 pay stubs" and "[p]rovide documentation showing the amount and frequency of the [government] benefits . . . ." *See id.* As discussed above, this documentation indicates the Agraans' gross

10

monthly income decreased by $1,768.11 since they filed their last modification application. *Compare* ECF No. 17-1 at 9, 15, *with* Sept. 2017 Application at 40; *see Ivey v. Chase Bank*, No. 14-CV-02289-NC, 2015 WL 294371, at *2 (N.D. Cal. Jan. 22, 2015) (holding borrower whose first application listed his monthly income as $14,000 "documented [a] change [in financial circumstances] when he submitted a second application to . . . and listed $22,000 as his income"). SPS relies unpersuasively on cases in which a plaintiff did not properly allege which documents it submitted to the servicer to document a change in financial circumstances. *See, e.g*, *Castaneda v. Wells Fargo Home Mortg.*, No. 2:15-CV-08870-ODW-KS, 2016 WL 777862, at *4 (C.D. Cal. Feb. 26, 2016) (dismissing § 2923.6(g) claim because plaintiff did not allege "what, if any, proper documentation she submitted to [defendant] to support her material change in circumstance for the third loan modification application"). Here, such documentation is before the court and indicates the Agraans "documented" their income sufficiently for the purposes of the preliminary injunction record.

Finally, SPS's argument the Agraans offer no proof the documentation provided in their September 2017 application was "not included in prior loan modification applications" is contradicted by the documents themselves. *See* PI Opp'n at 6. As SPS notes, the Agraans' September 2017 application indicates Ms. Agraan has been employed by her current employer for nearly 20 years. *See* Sept. 15 Application at 40 (showing Ms. Agraan was hired by her current employer in August of 1997). Similarly, the application indicates Mr. Agraan has received social security benefits since December 2016. *Id.* at 48 (letter from Social Security Administration stating Mr. Agraan has received monthly benefits since December 2016). While these documents show the source of the Agraans' income did not change from their prior application, it does not show that the amount of their income remained the same. Rather, as discussed above, the Agraans' documentation indicates a $1,768.11 decrease in monthly income. Further, the dates of the documents, including Ms. Agraan's July and August 2017 pay stubs and Mr. Agraan's letter dated September 6, 2017 from the Social Security Administration, clearly indicate they could not have been submitted in the Agraans' prior modification application, which was approved on June

/////

11

22, 2017.  *Compare* Sept. 15 Application at 46-48, *with* ECF No. 17-1 at 5 (June 22, 2017 letter approving modification application).

HBOR expressly authorizes a borrower to seek injunctive relief to enjoin a material violation of California Civil Code § 2923.6 when "a trustee's deed upon sale has not been recorded . . . ."  Cal. Civ. Code § 2924.12(a)(1).  Indeed, under HBOR, such an injunction "shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer . . . has corrected and remedied the violation or violations giving rise to the action for injunctive relief."  *Id.* § 2924.12(a)(2).  In light of the serious questions the Agraans have raised going to the merits of their dual-tracking claim, an injunction preventing the trustee's sale of the Agraans' property until SPS has completed its review of the Agraans' September application documenting changed financial circumstances from the date of their previous application is warranted.  Upon "showing that the material violation has been corrected and remedied[,]" SPS "may move to dissolve [the] injunction."  *See id.*

B. Balancing of Hardships

On the current record, "the balance of hardships between the parties tips sharply in favor of" issuing a preliminary injunction.  *See Cotrell*, 632 F.3d at 1137. .  A preliminary injunction prevents SPS from conducting a trustee sale until it evaluates the Agraans' pending modification application based upon their changed financial circumstances, or until the HBOR claim is properly decided on the merits.  While SPS explains it currently pays the Agraans' property insurance and taxes and has not received a mortgage payment from the Agraans in roughly six years, this hardship at this point does not overcome the Agraans' potential loss of their home should the sale proceed.  *See Tamburri v. Suntrust Mortg., Inc.*, No. C-11-2899 EMC, 2011 WL 2654093, at *2 (N.D. Cal. July 6, 2011); *see also Greene v. Wells Fargo Bank, N.A.*, No. 15-CV-00048-JSW, 2016 WL 360756, at *5 (N.D. Cal. Jan. 28, 2016) (finding balancing of hardships tipped sharply in plaintiff's favor because "[a]ny damages to Defendant would be monetary" while plaintiff risked "the loss of her home").  Further, the court can address SPS's hardship through a bond requirement.  *See Tamburri*, 2011 WL 2654093, at *2.  Further, the court

/////

12

can address SPS's hardship through a bond requirement. *See Tamburri*, 2011 WL 2654093, at *2.

C. <u>Likelihood of Irreparable Harm</u>

The Agraans request injunctive relief to stop the sale of their home. Real property is considered unique "[c]ourts have repeatedly concluded that the loss of one's home is sufficient to satisfy the element of irreparable injury." *See Castellanos v. Countrywide Bank NA*, No. 15-CV-00896-BLF, 2015 WL 914436, at *2 (N.D. Cal. Feb. 27, 2015); *see also other Startz v. JPMorgan Chase Bank, N.A.*, No. 216CV09627ODWPLA, 2017 WL 2218306, at *4 (C.D. Cal. May 19, 2017) (collecting cases). Thus, this factor weighs in favor of enjoining SPS from foreclosing on the property for now.

D. <u>Public Interest</u>

A preliminary injunction is in the public interest, as it ensures compliance with home-protection laws designed to protect the public. *See Sencion v. Saxon Mortg. Servs., LLC*, 2011 WL 1364007, at *1 (N.D. Cal. Apr. 11, 2011) ("[I]t is in the public interest to allow homeowners an opportunity to pursue what appear to be valid claims before being displaced from their homes.").

E. <u>Bond</u>

Under Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed.R.Civ.P. 65(c). Rule 65(c), however, "invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotations, emphasis ad citation omitted). The district court may thus "dispense with the filing of a bond when it concludes that there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.*

SPS requests the court issue a preliminary injunction only if it also requires the Agraans to pay $2,271.04 in monthly mortgage payments, the first installment of property taxes for 2017-2018, obtain proof of property insurance, reimburse previously advanced taxes and

insurance and post a bond of $50,000 to cover property diminution in value, waste, and attorneys' fees. PI Opp'n at 8.

At this point, given the settlement conference scheduled below with the parties' consent, the court determines a bond in the amount of $1,800 is sufficient. In addition, the Agraans must pay SPS the first installment of property taxes and provide SPS with proof of property insurance. The Agraans are therefore ORDERED to post a bond within thirty (30) days in the amount of $1,800 with the Clerk of the Court, and also pay SPS the first installment of property taxes for 2017-2018 within thirty (30) days. The Agraans further shall provide SPS with proof of property insurance within seven days of this order.

IV. SETTLEMENT CONFERENCE

At hearing, both parties expressed interest in attending a settlement conference before a magistrate judge. Accordingly, the court ORDERS a settlement conference SET for January 11, 2018 at 10:00 a.m. in Courtroom 8 before Magistrate Judge Edmund F. Brennan. The parties are directed to submit Confidential Settlement Conference Statements to chambers seven days prior to the Settlement Conference using the following email address: efbordersrders@caed.uscourts.gov. Such statements are not to be filed with the Clerk; however, each party shall file a one page document entitled Notice of Submission of Confidential Settlement Conference Statement. The parties may agree, or not, to serve each other with the settlement statements. Each party is reminded of the requirement that it be represented in person at the settlement conference by a person able to dispose of the case or fully authorized to settle the matter at the conference on any terms. *See* Local Rule 270. In this case, Mr. and Mrs. Agraan must each attend the settlement conference.

IT IS SO ORDERED.

DATED: December 21, 2017.

_____
UNITED STATES DISTRICT JUDGE